UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OUTDOORSY, INC., | : | Case No. 2:17-cv-00641-ALM-EPD |
| Plaintiff, | : | |
| | | Judge Algernon L. Marbley |
| vs. | : | |
| | | Mag. Judge Elizabeth A. Preston Deavers |
| RVSHARE, LLC, d/b/a/RVSHARE.COM, | : | |
| SHARED PEER HOLDINGS, LLC, MWJ | | **Jury Trial Demanded** |
| INTERNATIONAL, INC., MARK | : | |
| JENNEY, JOEL CLARK, LAUREL | | |
| MICHALEK, NAMECHEAP, INC., | : | |
| CLOUDFLARE, INC. and JOHN DOE 1 - | | |
| 10, | : | |
| | | |
| Defendants. | : | |

_____

### DEFENDANTS' ANSWER TO COMPLAINT AND COUNTERCLAIMS WITH JOINDER OF PLAINTIFF-COUNTERCLAIM DEFENDANTS

Defendants RVshare, LLC, Shared Peer Holdings, LLC, MJW International, Inc., Mark Jenney, Joel Clark, and Laurel Michalek (collectively "Defendants") hereby answer Plaintiff Outdoorsy, Inc.'s ("Plaintiff") Complaint ("Complaint") as follows:

### RESPONSE TO ALLEGATIONS ON THE INTRODUCTION

1.      To the extent any response is required:  Defendants admit that Plaintiff alleges violations of the statutes referenced in paragraph 1 of the Complaint.  Defendants deny violating any of the statutes referenced in paragraph 1 of the Complaint and deny the remaining allegations in paragraph 1 of the Complaint.

2.      Defendants deny committing any wrongful conduct for which Plaintiff is entitled to the relief requested in paragraph 2 of the Complaint and deny all other allegations in paragraph 2 of the Complaint.

3.      Denied, except that for purposes of this Civil Action No. 2:17-cv-00641-ALM-EP, Defendants admit that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 for an action arising under the trademark laws, Title 15 of the United States Code.

4.      Paragraph 4 of the Complaint contains a legal conclusion to which no answer is required. Defendants admit that it has transacted business in this judicial district, but denies the remaining allegations of paragraph 4 of the Complaint.

5.      Paragraph 5 of the Complaint contains a legal conclusion to which no answer is required.  To the extent any response is required: Denied. Moreover, none of the Defendants reside, and/or are domiciled, in the Southern District of Ohio.

**RESPONSE TO ALLEGATIONS ON THE PARTIES**

6.      Defendants deny the allegations of paragraph 6 of the Complaint for lack of knowledge or information sufficient to form a belief as to the truth of the allegations.

7.      Defendants admit that RVshare, LLC ("RVshare") is a limited liability company organized and existing under the laws of the State of Delaware.  Defendants also admit that RVshare is engaged in the business of Peer-to-Peer ("P2P") rentals of recreational vehicles. Defendants deny all other allegations in paragraph 7 of the Complaint.

8.      Defendants admit that Mark Jenney is an individual who resides at 3493 Torrey Pines Dr., Akron, Ohio 44333.  Defendants also admit that Mr. Jenney is a founder of RVshare and until recently was Chief Executive Officer of RVshare.

9.      Defendants admit that Shared Peer Holdings, LLC ("SPH") is an Ohio limited liability company organized and existing under the laws of the state of Ohio, having its principal place of business at 3493 Torrey Pines Dr., Akron, Ohio 44333.  Defendants also admit that SPH

is owner of the trademark RVSHARE. Defendants deny all other allegations in paragraph 9 of the Complaint.

10. Defendants admit that MJW International, Inc. ("MJW") is an Ohio limited liability company organized and existing under the laws of the state of Ohio, having an address at 3493 Torrey Pines Dr., Akron, Ohio 44333. Defendants also admit that MJW is the registered agent for SPH. Defendants deny all other allegations in paragraph 10 of the Complaint.

11. Defendants admit that Joel Clark is an individual who resides at 4588 Rex Lake Dr., Akron, Ohio 44319. Defendants also admit that Mr. Clark is a co-founder of RVshare and was until recently the Chief Operating Officer of RVshare.

12. Defendants admit that Laurel Michalek is an individual who resides at 7494 Mannheim Ct., Hudson, Ohio 44236. Defendants further admit that Ms. Michalek was former registrant and owner of the "Outdoorsy.com" web domain. Defendants also admit that the "Outdoorsy.com" web domain was transferred to Plaintiff following a decision in UDRP action *Outdoorsy Inc. v. Laurel Michalek*, FA1705001729910. Defendants admit that Exhibit A to the Complaint purports to be a copy of the Decision in UDRP action *Outdoorsy Inc. v. Laurel Michalek*, FA1705001729910. Defendants also admit that Exhibit B to the Complaint purports to be a copy of the Amended Complaint in UDRP action *Outdoorsy Inc. v. Laurel Michalek*, FA1705001729910. Defendants further admit that Exhibit C to the Complaint purports to be copies of exhibits to the Amended Complaint in UDRP action *Outdoorsy Inc. v. Laurel Michalek*, FA1705001729910. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 of the Complaint and therefore deny them.

13. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint and therefore deny them.

14. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint and therefore deny them.

15. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint and therefore deny them.

## RESPONSE TO ALLEGATIONS ON THE FACTUAL BACKGROUND

### A.     Responses to the Allegations on Outdoorsy and its OUTDOORSY Trademark.

16. Defendants admit that Exhibit E to the Complaint purports to be a copy of U.S. Trademark Registration No. 4,892,666 and that Exhibit F to the Complaint purports to be a copy of U.S. Trademark Registration No. 4,892,669. Plaintiff's allegations regarding certificates of registration as prima facie evidence of validity of the registered trademarks is a legal conclusion to which no response is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16 of the Complaint and therefore deny them.

17. Plaintiff's allegations regarding its purported extensive common law rights, exclusive ownership, continuous use, and validity of the OUTDOORSY mark are legal conclusions to which no response is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17 of the Complaint and therefore deny them.

18. Plaintiff's allegations regarding the purported distinctiveness and widespread recognition of the Outdoorsy Trademarks are legal conclusions to which no response is required.

4

Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 of the Complaint and therefore deny them.

19.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19 of the Complaint and therefore deny them.

20.     Plaintiff's allegations regarding the purported distinctiveness of the Outdoorsy Trademarks is a legal conclusion to which no response is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 of the Complaint and therefore deny them.

21.     Plaintiff's allegations regarding secondary meaning in the Outdoorsy Trademarks is a legal conclusion to which no response is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 of the Complaint and therefore deny them, but note that the purported Outdoorsy Trademarks have only been in commercial use since 2015 and therefore cannot have established secondary meaning under 15 U.S.C. § 1052(F).

**B.      Responses to the Allegations on Defendant's Documented Illegal Misconduct.**

22.     Defendants deny the allegations in paragraph 22 of the Complaint.

23.     Defendants admit that the Ohio Attorney General instituted an action against Mr. Jenney and NSA Technologies in 2010 for alleged violations of the Ohio Consumer Sales Practices Act and the Ohio Administrative Code Substantive Rules. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 of the Complaint and therefore deny them.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and therefore deny them.

5

25.     Defendants admit that the Ohio Attorney General instituted an action against Mr. Jenney and NSA Technologies in 2010 for alleged violations of the Ohio Consumer Sales Practices Act and the Ohio Administrative Code Substantive Rules.  Defendants also admit that the 2010 action was resolved by entry of a Consent Judgment, a purported copy of which is attached as Annex T to Exhibit C of the Complaint.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 25 of the Complaint and therefore deny them.

26.     Defendants deny the allegations in paragraph 26 of the Complaint.

**C.      Responses to the Allegations on Defendants' Acts of Willful Violations of the Lanham Act.**

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint and therefore deny them.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint and therefore deny them.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint and therefore deny them.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint and therefore deny them.

31.     Plaintiff's allegations regarding Ms. Michalek acting as an agent for RVshare is a legal conclusion to which no response is required.  Defendants admit that Ms. Michalek and Share are based in Northeastern Ohio.  Defendants deny the remaining allegations in paragraph 31 of the Complaint.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and therefore deny them.

33. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint and therefore deny them.

34. Plaintiff's allegations regarding demonstrated intent is a legal conclusion to which no response is required. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 of the Complaint and therefore deny them.

35. Plaintiff's allegations regarding active and constructive knowledge is a legal conclusion to which no response is required. Defendants deny the remaining allegations in paragraph 35 of the Complaint.

36. Defendants admit that pursuant to the Decision in the UDRP action in *Outdoorsy Inc. v. Laurel Michalek*, FA1705001729910, on June 22, 2017, Ms. Michalek was ordered to transfer the outdoorsy.com domain to the Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36 of the Complaint and therefore deny them.

37. Paragraph 37 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required for the remaining allegations of paragraph 37 of the Complaint: Denied.

38. Paragraph 38 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required for the remaining allegations of paragraph 38 the Complaint: Denied.

39. Paragraph 39 of the Complaint contains legal conclusions to which no response is required. Defendants admit that Exhibit I to the Complaint purports to be a copy of customer review of Outdoorsy. To the extent a response is required for the remaining allegations of

7

paragraph 39 the Complaint: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 of the Complaint and therefore deny them.

40. Defendants deny the allegations in paragraph 40 of the Complaint.

41. Defendants deny the allegations in paragraph 41 of the Complaint.

42. Defendants deny the allegations in paragraph 42 of the Complaint.

43. Defendants deny the allegations in paragraph 43 of the Complaint.

44. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint and therefore deny them.

45. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Complaint and therefore deny them.

46. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Complaint and therefore deny them.

47. Defendants deny the allegations in paragraph 47 of the Complaint.

48. Defendants deny the allegations in paragraph 48 of the Complaint.

49. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Complaint and therefore deny them.

50. Paragraph 50 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 50 of the Complaint: Denied.

51. Paragraph 51 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 51 of the Complaint: Denied.

52.     Paragraph 52 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required for the remaining allegations of paragraph 52 of the Complaint: Denied.

53.     Paragraph 53 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required for the remaining allegations of paragraph 53 of the Complaint: Denied.

54.     Paragraph 54 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required for the remaining allegations of paragraph 54 of the Complaint: Denied.

## RESPONSE TO ALLEGATIONS ON COUNT I – ALLEGED INFRINGEMENT OF TRADEMARK (15 U.S.C. § 1114)

55.     Defendants incorporate their responses above to the allegations in the unnumbered preamble and paragraphs 1-54 of the Complaint as if set forth fully herein.

56.     Paragraph 56 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required for the remaining allegations of paragraph 56 of the Complaint: Denied.

57.     Defendants admit that Plaintiff alleges that Defendants infringe the OUTDOORSY trademark under Section 32 of the Lanham Act, 15 U.S.C. § 1114, but denies the remaining allegations of paragraph 57 of the Complaint.

58.     Paragraph 58 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required for the remaining allegations of paragraph 58 of the Complaint: Denied.

59.     Paragraph 59 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 59 of the Complaint: Denied.

60.     Paragraph 60 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 60 of the Complaint: Denied.

## RESPONSE TO ALLEGATIONS ON COUNT II – ALLEGED CYBERSQUATTING (15 U.S.C. § 1125(d))

61.     Defendants incorporate their responses above to the allegations in the unnumbered preamble and paragraphs 1-60 of the Complaint as if set forth fully herein.

62.     Paragraph 62 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 62 of the Complaint: Denied.

63.     Paragraph 63 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 63 of the Complaint: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 of the Complaint and therefore deny them.

64.     Paragraph 64 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 64 of the Complaint: Denied.

65.     Paragraph 65 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 65 of the Complaint: Defendants deny the remaining allegations of paragraph 65 of the Complaint and

further deny that Plaintiff is entitled to any recovery in association with its claims against Defendants.

### RESPONSE TO ALLEGATIONS ON COUNT III – FALSE DESIGNATION OF ORIGIN, PASSING OFF AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

66.     Defendants incorporate their responses above to the allegations in the unnumbered preamble and paragraphs 1-65 of the Complaint as if set forth fully herein.

67.     Paragraph 67 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 67 of the Complaint: Denied.

68.     Paragraph 68 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 68 of the Complaint: Denied.

69.     Paragraph 69 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 69 of the Complaint: Denied.

70.     Paragraph 70 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 70 of the Complaint: Denied.

### RESPONSE TO ALLEGATIONS ON COUNT IV – DECEPTIVE TRADE PRACTICES (Ohio Revised Code Chapter 4165)

71.     Defendants incorporate their responses above to the allegations in the unnumbered preamble and paragraphs 1-70 of the Complaint as if set forth fully herein.

72.     Paragraph 72 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 72 of the Complaint: Denied.

11

73.     Paragraph 73 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 73 of the Complaint: Denied.

74.     Paragraph 74 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 74 of the Complaint: Denied.

75.     Paragraph 75 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 75 of the Complaint: Denied.

76.     Paragraph 76 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required for the remaining allegations of paragraph 76 of the Complaint: Denied.

**RESPONSE TO PRAYER FOR RELIEF**

77.     To the extent that any response to the prayer for relief in the Complaint is required, Defendants deny that they have infringed any of Plaintiff's trademarks or that Plaintiff is entitled to any of its requested relief, including that specified in paragraphs A–G of the Prayer for Relief section of the Complaint.

**GENERAL DENIAL**

Defendants further deny each allegation in Plaintiff's Complaint that is not specifically admitted, denied, or otherwise responded to in this Answer to Plaintiff's Complaint.

**AFFIRMATIVE DEFENSES**

Subject to its responses above, and upon information and belief, Defendants allege and assert the following defenses in response to the allegations in Plaintiff's Complaint.  Regardless

12

of how such defenses are listed herein, Defendants undertake the burden of proof only as to those defenses that are deemed affirmative defenses as a matter of law. In addition to the defenses described below, Defendants specifically reserve the right to allege additional affirmative defenses pursuant to any docket control order or that become known through the course of this action.

## FIRST AFFIRMATIVE DEFENSE – ESTOPPEL

78.     Plaintiff's claims for trademark infringement, false designation or origin and unfair competition are barred by the doctrine of estoppel.  Having induced the USPTO to issue the Registration based on a false statement of first use and/or that there is no likelihood of confusion when virtually identical marks are used in connection with goods and services such as a podcast about the outdoors, photography services, a mobile app for connecting people interested in outdoor activities, and children's activity toys.

## SECOND AFFIRMATIVE DEFENSE – NO TRADEMARK RIGHTS

79.     Each of Plaintiff's claims fails because the alleged Outdoorsy trademarks are merely descriptive of Plaintiff's products and services.  "OUTDOORSY" is merely a colloquial, slang term for a person "fond of outdoor activities"  or someone "enjoying outdoor activities." Plaintiff's products and services are all directly related to recreational outdoor activities accessible through the use of a recreational vehicle.  As such, "OUTDOORSY" is merely descriptive as used in connection with Plaintiff's products and services, and Plaintiff has failed to establish secondary meaning in its favor.

80.     Numerous other entities use the "OUTDOORSY" mark in connection with recreational outdoor activities, which further evidences that the "OUTDOORSY" marks are descriptive when used in connection with such products and services.  For example, "OUTDOORSY" has been registered for use on: (1) "photographs in the field of nature and

13

outdoor recreation"; and (2) "children's multiple activity toys." Printouts from the USPTO website evidencing these registration are attached hereto as **Exhibit A**. Similarly, there is an online retailer Wildish that sells "Outdoorsy Gear" for recreational outdoor activities nationwide through the online retail website: https://staywildish.com/collections/all (last accessed on August 7, 2017). There is podcast by National Public Radio called "Outdoorsy" which is about doing things outdoors, and there is a mobile app for iOS and Android called "Outdoorsy" about bringing people together to do outdoor activities (*see*, *e.g*.,

https://twitter.com/OutdoorsyApp?lang=en).

81.     Given the descriptive nature of the "OUTDOORSY" marks as applied to Plaintiff's goods and services, the "OUTDOORSY" marks are invalid and the USPTO improperly issued their Registrations.

### THIRD AFFIRMATIVE DEFENSE—WAIVER & UNCLEAN HANDS

82.     Plaintiff is barred in whole or in part under principles of equity, including without limitation, waiver and/or unclean hands.

### FOURTH AFFIRMATIVE DEFENSE—NO ENTITLEMENT TO INJUNCTIVE RELIEF

83.     Plaintiff is not entitled to injunctive relief under any theory, at least because: (1) Plaintiff has not suffered nor will it suffer irreparable harm because of Defendants' conduct; (2) any harm to Plaintiff would be outweighed by the harm to Defendants if an injunction were entered; (3) Plaintiff has an adequate remedy at law even if it were to prevail in this action; and (4) the public interest would not be served by an injunction in favor of Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE—FAIR USE

84.     The claims made in the Complaint are barred, in whole or in part, by the doctrines of fair use, normative fair use and/or descriptive use.

## SIXTH AFFIRMATIVE DEFENSE—FUNCTIONALITY

85.     The claims made in the Complaint are barred, in whole or in part, on the basis that any marks at issue are functional.

## SEVENTH AFFIRMATIVE DEFENSE—LACK OF SECONDARY MEANING

86.     The claims made in the Complaint are barred, in whole or in part, on the basis that some or all marks at issue lack secondary meaning.

## EIGHTH AFFIRMATIVE DEFENSE—NO INFRINGEMENT

87.     The alleged trademarks have not been infringed under federal or state law.

## NINTH AFFIRMATIVE DEFENSE—NO CAUSATION

88.     Plaintiff's claims are barred because Plaintiff's damages, if any, were not caused by Defendants.

## TENTH AFFIRMATIVE DEFENSE—NO DAMAGES

89.     Without admitting that the Complaint states a claim, there have been no damages in any amount, manner or at all by reason of any act alleged against Defendants in the Complaint, and the relief prayed for in the Complaint therefore cannot be granted.

## ELEVENTH AFFIRMATIVE DEFENSE—FAILURE TO MITIGATE

90.     The claims made in the Complaint are barred, in whole or in part, because of a failure to mitigate damages, if such damages exist.

## TWELFTH AFFIRMATIVE DEFENSE—FIRST AMENDMENT

91.     The claims made in the Complaint are barred, in whole or in part, by the First Amendment to the Constitution of the United States.

## THIRTEENTH AFFIRMATIVE DEFENSE—ABANDONMENT

92.     The claims made in the Complaint are barred, in whole or in part, by abandonment of any marks at issue.

## FOURTEENTH AFFIRMATIVE DEFENSE—THIRD-PARTY USE

93.     The claims made in the Complaint are barred, in whole or in part, by reason of other parties' use of any marks at issue.

## FIFTEENTH AFFIRMATIVE DEFENSE—ACTIONS OF OTHERS

94.     The claims made in the Complaint are barred, in whole or in part, because Defendants are not liable for the acts of others over whom they have no control.

## SIXTEENTH AFFIRMATIVE DEFENSE – RESERVATION OF RIGHTS

95.     Defendants reserve any and all rights to amend their answer, including their currently pled defenses, and/or to add additional defenses, as any basis for doing so becomes apparent.

## COUNTERCLAIM

## RVSHARE, LLC, MARK JENNY, JOEL CLARK AND LAUREL MICHALEK ("COUNTERCLAIMANTS") COUNTERCLAIMS FOR DEFAMATION *PER SE* AND TRADE LIBEL AGAINST DEFENDANTS JEFF CAVINS AND OUTDOORSY, INC.

RVshare, LLC, Mark Jenney, Joel Clark, and Laurel Michalek ("Counterclaimants") hereby allege the following facts and claims against defendant Outdoorsy, Inc. and joined parties Jeffrey Cavins and John Doe as follows:

## COUNTERCLAIMS

1.      Counterclaimants, as and for their counterclaims against Counterclaim Defendant Outdoorsy, Inc. ("Outdoorsy") and new Counterclaim Defendants Jeffrey Cavins ("Cavins") and unidentified John Doe (collectively "Counterclaim Defendants"), state as follows:

## NATURE OF ACTION

2.      This is an action for defamation under Ohio law and common law trade libel arising from Counterclaim Defendants' knowingly and objectively false and misleading public statements of and concerning Counterclaimants.

## PARTIES

3.      Counterclaimant RVshare, LLC is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Akron, Ohio. RVshare is the largest and most successful RV peer-to-peer marketplace on the Internet where RV owners are able to rent their RVs directly to consumers using RVshare's online platform.

4.      Counterclaimant Mark Jenney ("Jenney") is an individual who resides at 3493 Torrey Pines Dr., Akron, Ohio 44333. Jenney is the co-founder of RVshare. Jenney is an Ohio native who grew up in the small town of Barberton outside of Akron. Jenney dropped out of school at the age of 17 to start his first business selling second hand goods purchased at the local

17

military surplus store on eBay. Since foregoing school, Jenney has started over a half-dozen businesses all based in the state of Ohio.

5.      Counterclaimant Joel Clark ("Clark") is an individual who resides at 4588 Rex Lake Drive, Akron, Ohio 44319. Clark is also co-founder of RVshare and current CEO. Clark is an Ohio native who grew up in New Franklin and attended The Ohio State University from 2008-2011 before dropping out to start his first business, Nimisila Timerworks LLC, which built handmade furniture from the reclaimed wood of collapsed Ohio barns. In 2012, Clark met Jenney, and together they founded RVshare in 2013.

6.      Counterclaimant Lauren Michalek ("Michalek") is an individual who resides at 7494 Mannheim Ct., Hudson, Ohio 44236. Michalek is a friend of Jenney's but otherwise has no relation to RVshare or Clark. Michalek grew up in Twinsburg, Ohio where she attended Twinsburg High School. Michalek obtained a marketing degree from John Carroll University and currently lives in Hudson, Ohio and works as a managing executive at Handled Hosting LLC.

7.      On information and belief, Counterclaim Defendant Outdoorsy is a Delaware corporation with its principal place of business located at 1475 Folsom Street, 3rd Floor, San Francisco, CA 94103. Outdoorsy is an upstart competitor to RVshare, and is likely the second largest peer-to-peer online marketplace for RV rentals behind RVshare.

8.      On information and belief, Counterclaim Defendant Cavins is an individual who resides in the San Francisco Bay Area. Cavins is the founder and CEO of Outdoorsy.

9.      Counterclaimants do not know the true name or legal capacities of the Counterclaim Defendant identified as John Doe, who is named herein as the commenter "john" to the June 24, 2017 article published on DomainGang.com.  It is believed that John Doe is an

alter ego of Counterclaim Defendant Cavins or is an employee and/or agent of Counterclaim Defendant Outdoorsy who was motivated to falsely impugn the reputation of RVshare.

10.     Pursuant to Fed. R. Civ. P. 19 and 20, the compulsory or permissive joinder of the Counterclaim Defendants either as ordered or involuntary plaintiffs because claims pleaded in the action involve those parties and in their absence, the court cannot accord complete relief among the existing parties. The Counterclaim Defendants, upon information and belief, are subject to service of process and their joinder will not deprive the court of subject matter jurisdiction.

## JURISDICTION AND VENUE

11.     This action arises under Ohio common law.  Jurisdiction is based upon 28 U.S.C. § 1367(a) and under Fed. R. Civ. Proc., Rules 19 and 20 as Cavins is an indispensable party and Cavins' defamatory statements arise out of the same occurrences alleged in Outdoorsy's original Complaint, and Counterclaimants' counterclaims against Outdoorsy.

12.     Upon information and belief, Outdoorsy conducts business in this District. Moreover, by filing its Complaint in this District, Outdoorsy has affirmatively sought and consented to the personal jurisdiction of this Court for purposes of Counterclaimants' Counterclaims, and the Court does have personal jurisdiction over Outdoorsy.

13.     Upon information and belief, this Court has personal jurisdiction over Counterclaim Defendant Cavins by virtue of his committing tortious acts in this District.

14.     Upon information and belief, this Court has personal jurisdiction over Counterclaim Defendant John Doe by virtue of his committing tortious acts in this District.

15.     To the extent that venue of the main action in this District is proper, venue for these Counterclaims in this District is also proper pursuant to 28 U.S.C. § 1391. Venue is also

proper in this Court under § 1391 because Counterclaim Defendants are doing and transacting business in this District and/or have committed acts of tortious conduct and trade libel within this judicial district.

### FACTUAL BACKGROUND

16.     In 2013, Mark Jenney and his fiancée decided they wanted to take an RV honeymoon following their wedding. After purchasing their RV in a moment of excitement about their honeymoon, they realized they did not know what to do with the RV after the honeymoon. Jenney decided they would rent their RV and assumed there must be an "Airbnb for RVs" they could sign-up for. When Jenney discovered there was no "Airbnb for RVs," he and two friends (including Counter-Plaintiff, Clark) decided to build it themselves.

17.     In 2013, RVshare was born and became the world's first peer-to-peer RV rental marketplace. RVshare has grown rapidly ever since and today is indisputably the market leader. RVshare currently employs over 50 full-time employees in Akron, Ohio where each employee receives full healthcare benefits, vision, and dental with no employee contribution, and an annual education stipend and travel stipend.

18.     RVshare's website went live in August 2013, approximately two full years before Counter-Defendant, Outdoorsy entered the market with its "copy-cat" service. By November 2014, RVshare was identified by the popular website Product Hunt as the "Airbnb for RVs." (https://www.producthunt.com/posts/rvshare). RVshare continued to be identified as the premier peer-to-peer RV rental platform well before Outdoorsy ever existed. *See*, *e.g*., http://www.cnn.com/travel/article/peer-to-peer-travel-websites/index.html, https://www.lonelyplanet.com/travel-tips-and-articles/the-changing-role-of-travel-tech-in-2015/40625c8c-8a11-5710-a052-1479d2760007.

19.     RVshare's peer-to-peer platform if far more popular than Outdoorsy's platform. For example, according to SimilarWeb, a third party web traffic analytics platform, RVshare is visited far more than Outdoorsy's platform. In the peak months of the RV rental season for 2017—June and July—RVshare's website received 1.48mm and 1.66mm visitors respectively compared to Outdoorsy's 440,000 and 540,000 visitors—a 3x disparity.

20.     In 2017, its fourth year of operation, RVshare is on pace to process more 870,000 rental requests, representing more than $750,000,000 in RV rentals.

21.     RVshare has further distinguished itself from all the copy-cat services, such as Outdoorsy, by offering an innovative insurance program in an exclusive partnership with MBA insurance. For the past 39-years, MBA Insurance has specialized in RV rental insurance and selected RVshare has its exclusive partner in offering RV insurance to the peer-to-peer market.

22.     Finally, RVshare is unique in that it is a "bootstrapped" company. It is wholly owned and funded by its founders, and has resisted the many offers for outside investment from venture capitalists. This has allowed RVshare's founders the freedom to build the best product and company possible without influence of outside investors looking to make a quick profit on their investment.

**A.      Outdoorsy's UDRP Proceeding Against Michalek.**

23.     As averred in its Complaint, in May 2017 Outdoorsy filed a Complaint in the National Arbitration Forum pursuant to ICANN's Uniform Domain Name Dispute Resolution Policy ("UDRP") regarding the Disputed Internet domain www.outdoorsy.com (the "Disputed Domain").

24.     In its UDRP Complaint, Outdoorsy identified the Respondent as Counterclaimant Michalek.  Outdoorsy stated in its UDRP Complaint that Michalek acted as the agent of Counterclaimant RVshare regarding her then-ownership of the Disputed Domain.

25.     As averred in the Complaint, the decision in *Outdoorsy Inc. v. Laurel Michalek*, FA1705001729910 by the National Arbitration Forum ("NAF") issued on June 22, 2017, ordering transfer of the Disputed Domain to Outdoorsy, and mentioning "convincing evidence that Respondent, Laurel Michalek, has acted as an agent of RVshare, a competitor [Outdoorsy], in registering the disputed domain name."

### B.    UDRP Proceeding Covered By DomainGang.com.

26.     Upon information and belief, on June 24, 2017, DomainGang.com published an online article at http://domaingang.com/domain-law/outdoorsy-com-18-year-old-domain-lost-via-the-udrp-process/#comment-86645 (last accessed in August 2017), entitled "Outdoorsy.com: 18 year old domain lost via the UDRP process" discussing the June 22, 2017 NAF decision ("DomainGang Article").  A copy of the DomainGang Article is attached as **Exhibit B**.

27.     The DomainGang Article includes a hyperlink ("per the details of this UDRP") to the June 22, 2017 NAF decision in *Outdoorsy Inc. v. Laurel Michalek*, FA1705001729910 at http://www.adrforum.com/domaindecisions/1729910.htm (last accessed in August 2017).

28.     According to the DomainGang.com website, "**DomainGang** provides daily entertainment and parody content for the domain industry! Articles that contain the '100% True' notice are entirely true – but still fun to read."

22

C.    **Counter-Defendants Defamatory Statements.**

29.    Counterclaim Defendant Cavins owns and operates an online social media account using Facebook at https://www.facebook.com/jeff.cavins.12 (last accessed in August 2017).

30.    Counterclaim Defendant Cavins routinely promotes his company Outdoorsy through his personal Facebook account.  For example, the picture banner on Cavins' personal Facebook homepage is a photo advertisement for "*Outdoorsy* Amazing RV Rentals Safe, Easy, Fully Inspired. Huge Local Selection." *See*, *e.g*., https://www.facebook.com/jeff.cavins.12 (last accessed September 9, 2017).

31.    On June 28, 2017, Cavins shared the June 24, 2017 DomainGang Article via his personal Facebook account.  Cavins included the following additional comment in his post:

> *When a cybersquatter holds your domain for ransom, demands millions of dollars for it and threatens that if you don't pay up, they will trash your Trademarks by tagging your business name with porn sites, you do everything you can to protect your IP, your customers, your investors and your brand. It also helps to have a good lawyer on your board. The UDRP just ruled in our favor and did the right thing. The domain was rightfully awarded to <u>Outdoorsy</u> last week.*

A copy of Cavins' June 28, 2017 Facebook post and additional comments ("Cavins' First Comment") is attached as **Exhibit C**.

32.    As a result of the privacy settings for Cavins' Facebook account, the DomainGang Article shared by Cavins and Cavins' First Comment were visible to any Facebook user on June 28, 2017.  Both the article and Cavins' First Comment continue to be visible to any Facebook user at https://www.facebook.com/jeff.cavins.12/posts/10213375164831566 (last accessed in August 2017).

33.    At least forty-nine Facebook users interacted with, and likely many more viewed, Cavins' June 28, 2017 Facebook Post, and twelve Facebook users added comments to the post.

23

Cavins' replied to a comment by Facebook user Meredith Skrzypek Arthur ("Mer.") on June 28, 2017 at 6:08 AM, and stated:

> [T]hanks Mer. these people also run a porn business and started tagging our name in porn videos, as retaliation for the UDRP Panel ruling.

A copy of Cavins' June 28, 2017 comment at 6:08 AM ("Cavins' Second Comment") is attached as **Exhibit D**.

Less than two hours later, at 7:53 AM on June 28, 2017, a commenter identified as "john" (Counterclaim Defendant "John Doe") commented on the DomainGang Article ("John's First Comment"), which stated:

> Cyber squatters bought the domain via a fast cash transaction, then ransomed the domain by approaching the plaintiff and demanding millions of dollars in cash in exchange for the domain. When the plaintiff refused, they started tagging the company's name on porn videos to drive negative SEO but the UDRP stepped in, gave their ruling and now the respondent must transfer the domain. this kind of hostile activity only leads to damages claims and it's hard to defend the blatant and malicious behavior to a Judge.

This same commenter identified as "john" added a second comment to the DomainGang Article at 7:55 AM ("John's Second Comment"), which continued:

> Now the respondent, due to sour grapes and their desire to get even with the UDRP ruling, is aggressively tagging the name of the plaintiff's company with porn videos. this is likely to blow up in their faces. Not a smart thing to do.

Later that day, at 4:34 PM, Cavins added a third comment to his June 28, 2017 Facebook Post, this time stating:

> [T]hank you for your support everyone. It's one thing to compete but another thing to use illicit tactics and pornography to shakedown a competitor. We believe in ethics and hard work, but these people are invested in scam tactics. We all appreciate your support.

A copy of Cavins' June 28, 2017 comment at 4:34 PM ("Cavins' Third Comment") is attached as **Exhibit E**.

34.    The following day, on June 29, 2017 at 7:43 PM, the commenter "john" disclaimed any association with Outdoorsy after being questioned by the DomainGang Article moderator regarding his association with the UDRP Complaint ("John's Third Comment"), stating:

> I am not involved. I don't think there is any lawsuit. But yes, I do have proof of the activity as I know the respondents.

35.    Clicking on the hyperlink for the DomainGang Article commenter "john" resolves to the inoperable website "www.outdoorsy.so."

36.    Based upon the strong similarity in Cavins' First and Second Comments and John's First and Second Comments, and the DomainGang Article hyperlink address for the user "john" resolving to a non-operable website using the "OUTDOORSY" mark, it is believed that DomainGang Article commenter "John Doe" is actually Counterclaim Defendant Cavins, or someone working closely with Cavins at Outdoorsy who would have intimate knowledge of the UDRP action.

37.    Although Counterclaimants were not expressly identified in Cavins' Facebook comments, a person clicking on the hyperlink ("per the details of this UDRP") within the DomainGang Article shared in Cavins' Facebook page would understand Cavins' First, Second or Third Comments to refer to Counterclaimants RVshare, Jenney, Clark and Michalek.

## FIRST COUNTERCLAIM – DEFAMATION *PER SE* AND *PER QUOD*

38.    Counterclaimants incorporate the foregoing allegations in paragraphs 1 through 37 as if fully set forth herein.

39.    Counterclaim Defendants Cavins, Outdoorsy, and John Doe have made numerous factual statements to other persons, alleging numerous actions undertaken or conducted by Counterclaimants.

40.     Among the factual statements alleged by Cavins, Outdoorsy, and John Doe were that Counterclaimants (i) are cybersquatters (ii) demanded millions of dollars in ransom from Outdoorsy and Cavins for the Disputed Domain, (iii) run a pornography business, (iv) tagged Outdoorsy's name in pornographic websites and pornographic videos in retaliation for the NAF decision, and (v) use illicit tactics and pornography to shakedown a competitor and are invested in scam tactics.

41.     In making these statements regarding Counterclaimants, Cavins and John Doe acted in their personal capacity and/or as agents of Outdoorsy.

42.     The statements made by Cavins, Outdoorsy and John Doe identified above regarding Counterclaimants were false.

43.     Cavins, Outdoorsy, and John Doe published their statements regarding Counterclaimants to others without privilege.

44.     Cavins, Outdoorsy, and John Doe were at fault for publishing the false statements, or at very least, negligent in publishing the false statements regarding Counterclaimants.

45.     The false statements made by Cavins, Outdoorsy, and John Doe regarding Counterclaimants are defamatory and defamatory as a matter of law because the statements and allegations were intended to (1) cause injury to Counterclaimants' reputation, (2) expose Counterclaimants to public hatred, contempt, ridicule, shame or disgrace, and/or (3) affect Counterclaimants adversely in their trade or business.

46.     The false defamatory statements of Cavins, Outdoorsy, and John Doe damaged Counterclaimants.

## SECOND COUNTERCLAIM – TRADE LIBEL

47.     Counterclaimants incorporate the foregoing allegations in paragraphs 1 through 46 as if fully set forth herein.

48.     Cavins, Outdoorsy, and John Doe made false statements about Counterclaimants identified above.

49.     Cavins, Outdoorsy, and John Doe are at fault for making the false statements.

50.     The false statements of Cavins, Outdoorsy, and John Doe have injured the reputation of Counterclaimants and/or exposed Counterclaimants to public hatred, contempt, ridicule, shame or shame, and/or adversely affected Counterclaimants' trade.


## PRAYER FOR RELIEF

**WHEREFORE,** Counterclaimants respectfully pray for judgment against Counterclaim Defendants Cavins, Outdoorsy, and John Doe as follows:

A.  For an award of general and special damages in an amount in excess of the minimum jurisdictional limits of this Court in accordance with proof at trial, together with interest thereon at the maximum legal rate;

B.  For punative and/or exemplary damages to the extent available;

C.  For an award of Counterclaimants' attorneys' fees and costs of suit incurred herein; and

D.  For such other and further relief in favor of Counterclaimants as the Court deems just and proper.

## JURY ENDORSEMENT

Defendants-Counterclaimants demand trial by jury on all claims so triable in this action.

Dated: September 11, 2017         Respectfully submitted,


*/s/ Daniel J. Donnellon*             
Daniel J. Donnellon (0036726)
    Trial Attorney
Alexander S. Rodger (0089525)
BINGHAM GREENEBAUM DOLL LLP
2350 First Financial Center
255 East Fifth Street
Cincinnati, OH 45202
Direct: (513) 455-7610
Fax: (513) 762-7910
Email: ddonnellon@bgdlegal.com
       arodger@bgdlegal.com


Eric W. Benisek (admitted *pro hac vice*)
Jeffrey T. Lindgren (admitted *pro hac vice*)
Christopher Larson (admitted *pro hac vice*)
VASQUEZ BENISEK & LINDGREN LLP
3685 Mt. Diablo Boulevard, Suite 300
Lafayette, CA 94549
925-627-4250
925-403-0900-Fax
Email: ebenisek@vbllaw.com
Email: jlindgren@vbllaw.com
Email: clarson@vbllaw.com

*Counsel for Defendants RVshare, LLC, Shared Peer*
*Holdings, LLC, MJW International, Inc., Mark*
*Jenney, Joel Clark, and Laurel Michalek*

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2017, a true and correct copy of the foregoing was filed using the CM/ECF system. Notice of this filing has been sent to all parties through the Court's CM/ECF system including counsel for Plaintiff:

Joseph Richard Dreitler
Mary R True
Dreitler True LLC
19 E. Kossuth St.
Columbus, OH 43206
614-449-6677
Email: jdreitler@ustrademarklawyer.com
Email: mtrue@ustrademarklawyer.com

/s/ Daniel J. Donnellon
Daniel J. Donnellon